IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA ANN WATTS, | § | |
| *Plaintiff*, | § | 5-17-CV-00192-RBF |
| vs. | § | |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY; | § | |
| *Defendant*. | § | |

## **ORDER**

This Order concerns Plaintiff Debra Ann Watts's request for judicial review of the administrative denial of her application for disability insurance benefits under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). This action comes to the undersigned pursuant to 28 U.S.C. § 636(c), following the parties' consent. *See* Dkt. Nos. 7, 9, & 11. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g).

After considering Watts's Brief, Dkt. No. 12, the Brief in Support of the Commissioner's Decision, Dkt. No. 13, the transcript of the administrative proceedings ("Tr."), Dkt. No. 8, the other pleadings on file, the applicable authority, and the entire record in this matter, the Court will **REVERSE** the Administrative Law Judge's ("ALJ") decision and **REMAND** this matter to the Commissioner for further consideration, as discussed below. Although portions of the ALJ's decision are supported by substantial evidence and, indeed, are not challenged by Watts in this proceeding, substantial evidence does not support the portion of the ALJ's finding at step two of the sequential disability analysis in which the ALJ determined Watts's affective disorder is not a

1

severe mental impairment. Moreover, this error is not harmless, as it affects the remainder of the ALJ's sequential analysis. Remand is therefore required on this record.

**I.      Background**

Plaintiff Debra Ann Watts filed her application for disability insurance benefits and for supplemental security income in August 2013, alleging a disability onset date of January 1, 2011. Tr. 191-210. Watts was 47 years old on her alleged disability onset date and 52 years old at the time of the ALJ's decision. Watts has a 9th-grade education. She also has a certified nursing assistant license. *Id.* 273

Watts alleged the following impairments render her disabled: migraines, depression, back pain, leg pain, feet pain, and high blood pressure. Tr. 198. Watts's claims were initially denied on October 29, 2013, *id.* 86-88, and once again on January 7, 2014 following her request for reconsideration, *id.* 113-16. Watts then requested and received an administrative hearing. *Id.* 138-39. She and her attorney attended the hearing on July 21, 2015, at which Watts and vocational expert Judith Harper testified. *Id.* 30-61.

After conducting a hearing, the ALJ denied Watts's claim for disability benefits. *Id.* 12-22. In her analysis, the ALJ first found that Watts met the insured-status requirements of the Social Security Act, and then the ALJ applied the five-step sequential analysis required by the regulations. At step one of the analysis, the ALJ found Watts had not engaged in substantial gainful activity since the alleged onset date of January 1, 2011. *Id.* 14. At step two, the ALJ found Watts has the following severe impairments: migraines, osteoarthritis and allied disorders, and degenerative disc disease. *Id.* 14. The ALJ, however, found that Watts's medically determinable impairments of hypertension and affective disorder were not severe. *Id.* 15. It bears mentioning that the ALJ addressed Watts's affective disorder, indeed the disorder is reflected in

the record, but at the same time Watts did not premise her claim for benefits on an impairment stemming from her affective disorder. In any event, the ALJ at step three found that none of Watts's impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 16-17.

Before reaching step four of the analysis, the ALJ found that Watts had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: stand or walk for four hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes or scaffolds; and occasionally stoop, kneel, crouch, and crawl. *Id.* 17-20. With respect to Watts's mental capacity, the ALJ afforded "little weight" to the opinions of the state agency psychological consultants on the grounds that they were "internally inconsistent as well as inconsistent with each other and the examining consultative examiner." *Id.* 19. Accordingly, she assessed no mental residual functional capacity.

At step four, after considering the residual functional capacity and the testimony of the vocational expert, the ALJ determined that Watts was unable to perform her past relevant work as a home health provider. *Id.* At step five, however, the ALJ found that considering Watts's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, Watts had acquired work skills from her past relevant work that were transferrable to other occupations, with jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that Watts was not disabled for purposes of the Act, and therefore was not entitled to receive benefits. *Id.*

Watts's subsequent request for review of the ALJ's finding was denied by the Appeals Council. *Id.* 1-6. Accordingly, on March 13, 2017, after exhausting all available administrative remedies, Watts filed suit for judicial review. Dkt. No. 1.

## II. Legal Standards

*Standard of Review*. To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Fact findings supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Watts is disabled only if her physical or mental impairment or impairments are so severe that she is unable to perform her previous work and cannot—considering her age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which she lives, a specific job vacancy exists, or she would be hired if she applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof.* "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents [her] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on

the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c). This is the step of the sequential analysis upon which the Court focuses here because it is the ALJ's determination that Watts's affective disorder is not a severe impairment that is the focus of Watts's arguments before the Court, as will be discussed further below.

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work she has actually performed in the past or as defined by the Department of Transportation, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden at each of the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**III. Analysis**

Watts now presents a single issue: whether the ALJ erred in failing to find Watts suffers from a severe mental impairment in connection with her affective disorder. For the reasons discussed below, the Court finds that the ALJ erred at step two and that this error is not harmless. Accordingly, remand is required.

*The Step Two Analysis.* The ALJ evaluated the severity of Watts's mental impairments through a "special technique," reflected in the regulations, that involves rating the degree of functional limitation for each medically determinable mental impairment found. 20 C.F.R. § 404.1520a(a). According to this technique, the degree of functional limitation is rated in four

broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[1] If the degree of limitation in the first three functional areas is rated as "none" or "mild," and in the fourth area as "none," the impairment will generally be found not severe, barring evidence of more than a minimal limitation in the ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). But "to meet the severity threshold in the Fifth Circuit, the claimant need only make a *de minimis* showing that his impairment is severe enough to interfere with his ability to do work." *Dell-Wilkerson v. Astrue*, No. 108-CV-0130-CECF, 2010 WL 931884, at *3 (N.D. Tex. Mar. 12, 2010) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n. 5 (5th Cir. 1992)).

This case is somewhat unusual in several respects. First, the issue Watts raises before this Court—her affective disorder—was not a basis for her request for disability benefits. Nonetheless, the record reflects that the issue came up, and the ALJ addressed Watts's affective disorder in her explanation for the denial of benefits. *See, e.g.*, *Olivares v. Berryhill*, No. SA-16-CA-1220-XR, 2018 WL 4035990, at *9 (W.D. Tex. Aug. 23, 2018) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (noting the ALJ's duty to investigate and develop the facts extends to impairments clearly indicated on the record)), and 20 C.F.R. § 404.1529(b)). This procedural quirk may explain somewhat why the affective disorder was not a focus of prior proceedings.

Next, Watts's reports of her abilities and functioning appear in many ways to *exceed* those found by the medical examiner, and yet at the same time there is substantial reason to doubt Watts's self-reporting. In finding Watts only has mild limitations in activities of daily living, social functioning, concentration, persistence, or pace and no episodes of

---

[1] The pertinent regulation was amended on January 17, 2017, to somewhat refine the four areas of functional limitation *See id.* § 416.920a(c)(3) (eff. Jan. 17, 2017). Because Watts's claim preceded the amendment, the regulation's prior version is applied.

decompensation, the ALJ primarily relied on Watts's self-reporting in her Functional Reports and those she relayed to psychological consultant, Dr. Anne Esquivel. Tr. 15-16. For example, the ALJ referenced Watts's reported ability to handle her finances. *Id.* 15. But Dr. Esquivel reported "serious concerns regarding this information," explaining that Watts "appears to not be in touch with reality to some degree." *Id.* 480. Similarly, while the ALJ noted Watts denied experiencing hallucinations, Dr. Esquivel expressed that Watts "appears to have delusions of people stalking her and waiting outside her windows and door." *Id.* 482. During the examination, Watts was also unable to name large cities in the country or correctly subtract change from one dollar. *Id.* And while Dr. Esquivel reported that Watts interacted and communicated "extensively" during the examination, Dr. Esquivel also clarified that "it was quite difficult to follow [Watts's] train of thought and make sense of what she was saying." *Id.* In short, the record reflects ample basis to conclude that the primary basis for the ALJ's conclusions, Watts's self-reporting, is unreliable and inconsistent with the examiner's findings.

Accordingly, much of the evidence relied upon in the ALJ's non-severity finding involves statements of questionable reliability that Watts made about her own *perceived* abilities, along with partial excerpts from Dr. Esquivel's report that don't accurately reflect the thrust of the entire report. At the same time, the ALJ didn't mention Dr. Esquivel's "serious concerns" regarding Watts's ability to self-report. *Id.* 480. And it was Dr. Esquivel who also diagnosed Watts with Schizoaffective Disorder, and assigned her a global assessment of functioning ("GAF") score of 45, *id.* 483, which indicates a "'serious' impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)," *Costanzo v. Astrue*, No. CIV.A.G-07-418, 2009 WL 914053, at *14 n. 11 (S.D. Tex. Mar. 31, 2009) (describing the meaning of a GAF score of 45). "Although Global Assessment of Functioning scores do not have a direct

9

correlation to the severity requirements in the mental disorders listings, they can be helpful in evaluating a claimant's condition." *Harmon v. U.S. Comm'r*, No. 6:14-CV-02660, 2015 WL 9226138, at *7 (W.D. La. Nov. 17, 2015), *report and recommendation adopted*, 2015 WL 9237079 (W.D. La. Dec. 16, 2015) (ALJ erred in finding plaintiff's global assessment of functioning score of 60, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, signified plaintiff only possessed a mild difficulty in functioning). Dr. Esquivel concluded her report by explaining "[i]it is imperative that Ms. Watts be evaluated for psychotropic medications as soon as possible." *Id.* Even with medication, however, Dr. Esquivel categorized Watts's prognosis as "poor." *Id.*

The ALJ appears to have credited some portions of Dr. Esquivel's opinions and also discredited other portions—without any explanation as to why—all while purporting to give Dr. Esquivel's report significant weight. Although an ALJ is not required to give the opinion of a consultative examiner controlling weight, *see Andrews v. Astrue*, 917 F. Supp. 2d 624, 637 (N.D. Tex. 2013), the ALJ must explain the weight given to such opinions, *Batti v. Berryhill*, No. 4:17-CV-00059-A, 2017 WL 3842863, at *9 (N.D. Tex. Aug. 17, 2017), *report and recommendation adopted*, 2017 WL 3842351 (N.D. Tex. Sept. 1, 2017) (citing SSR 96-6p, 1996 WL 374180, at *2). An "ALJ must [also] consider all the record evidence and cannot 'pick and choose' only the evidence that supports [her] position." *Loza v. Apfel*, 219 F.3d 378, 393(5th Cir. 2000).[2] Here, the ALJ appears to have improperly elevated a claimant's unreliable self-reports over a medical

---

[2]*See also Estrada v. Barnhart*, No. CV.A.SA01CA0679OG NN, 2002 WL 31422431, at *7 (W.D. Tex. Aug. 13, 2002) ("By relying exclusively on selective portions of the medical record and on selective portions of plaintiff's hearing testimony, and not on the record as a whole, the ALJ did not properly apply the standard for determining the severity of plaintiff's impairments as provided in *Stone*."); *Armstrong v. Sullivan*, 814 F. Supp. 1364, 1373 (W.D. Tex. 1993) ("An ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence.").

expert's diagnosis and opinions, all without adequately explaining why. *See Tusken v. Astrue*, No. 4:08-CV-657-A, 2010 WL 2891076, at *10 (N.D. Tex. May 25, 2010), *report and recommendation adopted*, 2010 WL 2891075 (N.D. Tex. Jul. 20, 2010) (quoting *Gonzalez v. Barnhart*, No. SA-05-CA-0282-RF, 2006 WL 1875912, at *5 (W.D. Tex. Jun. 30, 2006) ("An ALJ who discounts the diagnoses and opinions of specialists in the field without providing specific, legitimate reasons for doing so has 'impermissibly substitut[ed] a layman's view of a disorder in lieu of an expert opinion.'").

Although the Court is not charged with re-weighing the evidence, Watts likely has met the required *de minimis* showing to establish that her mental impairment of affective disorder is severe enough to interfere with her ability to work. *See Stone*, 752 F.2d at 1101; *see also Sanders v. Astrue*, No. CIVA 307CV1827-G(BH), 2008 WL 4211146, at *8 (N.D. Tex. Sept. 12, 2008) ("given the low bar for the establishment of a severe impairment, Plaintiff presented some evidence that could support a finding of depression as a severe impairment"). But more to the point, the ALJ's contrary conclusion is not supported by substantial evidence because it necessarily rests on unexplained decisions to credit unreliable self-reporting over credible medical conclusions.

*Harmlessness.* To obtain remand, Watts must show that the ALJ's step two error was not harmless. *See Gills v. Colvin*, No. 3:11-CV-2962-BH, 2013 WL 1294651 *19 (N.D. Tex. 2013) ("application of harmless error analysis is appropriate in cases where the ALJ proceeds past step 2 in the sequential evaluation process"). She has done that, and a remand is necessary here.

"In the Fifth Circuit, harmless error exists when it is 'inconceivable' that a different administrative conclusion would have been reached absent the error." *Id*. Watts argues that the ALJ's step two error was not harmless because it led to a residual-functional-capacity

determination that did not include any mental limitations, which ultimately led to the ALJ's finding that she was not disabled at Step 5. Pl. Br. at 12. The Court agrees.

In assessing Watts's residual functional capacity, the ALJ specifically afforded "little weight" to the opinions of the state agency psychological consultants who relied on Dr. Esquivel's report to provide mental residual-functional-capacity assessment.[3] In rejecting these mental residual-functional-capacity findings, the ALJ reasoned that "[t]he record does not support a severe finding." *Id.* 19. But in making this determination, the ALJ again relied on Watts's self-reporting and ignored Dr. Esquivel's specific opinion that Watts appears to be incapable of reliably assessing her own functioning. This is the same error made at step two, and it infected the ALJ's evaluation of Watts's ability to perform work-related mental activities. *See Rodriguez v. Barnhart*, No. CIV.A.SA01CA1101FB(N, 2003 WL 1956230, at *8 (W.D. Tex. Mar. 21, 2003) (holding that because the ALJ failed to properly assess the severity of plaintiff's mental impairments at step two, his "assessment of plaintiff's RFC [residual functional capacity] became skewed and was contrary to the substantial evidence").

These errors are further compounded by the fact that the ALJ rejected the only medical opinions in the record addressing the effects of Watts's mental impairment on her ability to work.

> While the ALJ may choose to reject those [state agency psychological consultants'] opinions, [s]he cannot then independently decide the effects of [Watts's] mental impairments on her ability to work, as that is expressly prohibited by *Ripley* [*v. Chater*[,] 67 F.3d at 557-58 [(5th Cir. 1995)]. Instead, at that point, it became incumbent upon the ALJ to obtain an expert medical opinion

---

[3] *See* Tr. 19 (citing Tr. 73 (explaining that "[c]laimant can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, & respond appropriately to changes in routine work setting[s]") and Tr. 99 (explaining that "[c]laimant can understand, remember, carry out only simple instructions, make simple decisions, attend and concentrate for significant periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings")).

about the types of work activities that [Watts] could still perform given her [mental] impairment[].

*Shugart v. Astrue*, No. 3:12-CV-01705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013); *see also Williams v. Astrue*, 355 Fed. App'x 828, 832 n. 6 (5th Cir. Dec. 10, 2009) (noting, "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"). Accordingly, the ALJ's residual-functional-capacity assessment was erroneous and is not supported by substantial evidence.

For all these reasons, it is conceivable that the ALJ could have reached a different determination at step five absent the step-two error. Accordingly, the step-two error is not harmless. *See, e.g.*, *Patel v. Berryhill*, No. 4:16-CV-02066, 2017 WL 4155463, at *3 (S.D. Tex. Sept. 19, 2017) (ALJ did not commit harmless error when he determined plaintiff's medically determinable mental impairments of depression and anxiety were not severe; this error led to the failure to include any mental limitations in the residual-functional-capacity assessment, which in turn, led directly to the conclusion that plaintiff could perform his past relevant work); *Corbitt v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-558-CWR-LRA, 2013 WL 603896, at *5-6 (S.D. Miss. Feb. 19, 2013) (remanding case where the "ALJ's decision show[ed] that he did not seriously consider the specific problems" that the claimant's "diabetes create[d]" either at step two or "in the remainder of the five-step evaluation process to justify a finding of harmless error").

*Remand Instructions*. For all these reasons, remand is appropriate. This case will be remanded to the Commissioner for further proceedings consistent with this order. Specifically, the ALJ is directed to fully consider Dr. Esquivel's report and reassess whether Watts has a mental impairment that is "severe" within the meaning of the Social Security Act, as interpreted by the Fifth Circuit in *Stone*, 752 F.2d at 1101. The ALJ should then continue with the remaining

steps of the sequential evaluation process and re-evaluate all the medical evidence to determine whether, and to what extent, a mental residual-functional-capacity assessment is appropriate. To the extent the ALJ finds the medical evidence in the record inadequate regarding Watts's mental work-related abilities, the ALJ has a duty to seek additional information on this issue. *See Shugart*, 2013 WL 991252, at *5; *see also Hill v. Astrue*, No. 1:09–CV–165–SAA, 2010 WL 2362129, at * 4 (N.D. Miss. Jun. 10, 2010) (discussing the Commissioner's "affirmative duty" to seek additional information to reach a decision) (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). If necessary, the ALJ should hold another hearing and obtain new vocational expert testimony.

## IV. Conclusion

For the reasons discussed above, the ALJ's decision that Watts is not disabled is **REVERSED** and this case is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

**IT IS SO ORDERED**.

SIGNED this 26th day of September, 2018.

_____
RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE